**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. ANNE M. FAGO,<br><br>Relator,<br><br>BRINING THIS ACTION ON BEHALF<br>OF THE UNITED STATES OF<br>AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>M&T MORTGAGE CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action 03-1406 (GK/JMF) |

**MEMORANDUM OPINION**

This case was referred to me for resolution of discovery disputes. Currently pending before me is <u>Relator's Motion for Reconsideration</u> [#82] as well as an *in camera* review of a personnel document submitted by Defendant pursuant to my Order of August 30, 2006. For the reasons stated herein, <u>Relator's Motion for Reconsideration</u> will be denied, and Defendant's assertion of work product protection for the *in camera* document will be overruled.

**I.   BACKGROUND**

Relator Anne Fago ("Plaintiff" or "Fago") brought this *qui tam* action on behalf of the United States against her former employer M&T Mortgage Corporation ("M&T"), alleging that M&T violated the False Claims Act, 31 U.S.C. § 3729 *et seq*.[1] <u>Amended Complaint</u> ("Am.

---

[1] All citations to the United States Code are to the electronic version available on Westlaw and Lexis.

Compl.") at 2-4.  M&T is a "Direct Endorser" of mortgages insured by the Department of Housing and Urban Development ("HUD").  United States ex rel. Fago v. M&T Mortgage Corp., 238 F.R.D. 3, 5-6 (D.D.C. 2006).  These government-insured mortgages are typically made to low-income, first-time homebuyers and buyers with spotty credit histories. Am. Compl. at 5.  When these government-insured loans go into default, M&T presents a claim for payment of the loan to HUD, HUD pays M&T, and then HUD becomes the owner of the property. Id. at 6.  Plaintiff brought this lawsuit alleging that M&T submitted applications to HUD for loan guaranties that contained forgeries, thereby fraudulently causing HUD to guarantee and subsequently pay claims for loans that it otherwise would not have insured. Id. at 3.

Two issues are currently before the Court relating to documents in Defendant's possession requested by Plaintiff in discovery.  In Relator's Motion for Reconsideration, Plaintiff asks the Court to reconsider that portion of its August 30, 2006 Order whereby Plaintiff was denied certain documents used as a basis for a presentation by M&T to HUD regarding the alleged fraud. See Fago, 238 F.R.D. at 6.  In that same Order, the Court required an *in camera* review of certain personnel documents involving Suzanne Palmer. Id. at 12.

## II.   RELATOR'S MOTION FOR RECONSIDERATION

### A.   The Court's Order of August 30, 2006

Plaintiff previously moved the Court to compel the production of documents and certain deposition testimony relating to a presentation to HUD that M&T made on June 10, 2004. See Plaintiff's Memorandum in Support of Motion to Compel ("Pls. Mem. Comp.") at 6-7.  In particular, Plaintiff sought the production of all documents that were created in the course of an internal investigation, conducted by M&T's outside counsel, into Plaintiff's allegations and

subsequently discussed in the presentation to HUD. Id.  M&T refused to produce the requested documents and testimony on the grounds that they were protected by the work product doctrine. Fago, 238 F.R.D. at 7.  In moving to compel production, Plaintiff argued that the investigation and the documents created pursuant to that investigation were not work product because the investigation was conducted for the business purpose of explaining the situation to HUD, not in anticipation of litigation as required for work product protection. Id.  Furthermore, Plaintiff argued, even if any work product protection were afforded the documents in question, that protection was waived in Defendant's presentation to a third party—namely, HUD. Pls. Mem. Comp. at 10.  M&T asserted that any non-litigation purpose coincidently served by its investigation was purely collateral to the principal purpose of defending Plaintiff's lawsuit, and that the presentation of a summary of its findings to HUD in no way waived that protection. Fago, 238 F.R.D. at 7.

As stated in my Order, I found that M&T's investigation had dual purposes: one, to gather information in preparation of this litigation, the other, to reassure HUD and preserve its standing as a direct endorser of government-insured mortgages. See id.  In order to rule appropriately as to which documents were protected as work product pursuant to the gathering of information in preparation of this litigation, I ordered an *in camera* review of the documents in question. United States ex rel. Fago v. M&T Mortgage Corp., 235 F.R.D. 11, 17 (D.D.C. 2006).

The documents submitted fell into five general categories: (1) attorney notes from interviews with current and former M&T employees; (2) notes and questionnaires from employee exit interviews; (3) internal audits; (4) correspondence from M&T's counsel regarding this litigation; and (5) compilations of information. Fago, 238 F.R.D. at 7.  Following the *in camera*

review, I found that some, but not all, of the documents constitute work product and that, for the documents that constitute work product, protection was not waived by M&T's presentation to HUD. Id. at 9-10.

### *1.  Work Product Doctrine*

The work product doctrine is designed to balance the need of the adversary system to promote an attorney's preparation against society's general interest in revealing all facts relevant to the resolution of a dispute. In re Sealed Case, 856 F.2d 268, 273 (D.C. Cir. 1988) (citing In re Subpoenas Duces Tecum, 738 F.2d 1367, 1371 (D.C. Cir. 1984)).  A lawyer's work product may be reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal briefs, and countless other tangible and intangible ways." Hickman v. Taylor, 329 U.S. 495, 511 (1947). "Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten [and] [a]n attorney's thoughts, heretofore inviolate, would not be his own." Id.  In furtherance of this principle, Rule 26 of the Federal Rules of Civil Procedure protects from disclosure materials prepared by or for a party, its attorney, or its representative in anticipation of litigation and allows for discovery only upon a showing of substantial need and an inability to obtain the substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3).

In order for documents to be protected by the work product doctrine, the proponent must show that the documents were prepared or obtained *in anticipation of litigation*. Id.  "'In anticipation of litigation' contains two related, but nevertheless distinct, concepts.  One is temporal.  The other is motivational." Jinks-Umstead v. England, 231 F.R.D. 13, 15 (D.D.C. 2005) (quoting Edna Selan Epstein, The Attorney-Client Privilege and the Work Product

Doctrine, at 314 (4th ed. 2001)).  First, at the time the document was prepared or obtained, there must have been at least "a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable."  EEOC v. Lutheran Soc. Servs., 186 F.3d 959, 968 (D.C. Cir. 1999) (citing In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998)).  Second, the document must have been "prepared or obtained *because of* the prospect of litigation."  Lutheran Soc. Servs., 186 F.3d at 968 (quoting Senate of Puerto Rico v. United States Dep't of Justice, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987)) (emphasis added).  The operative question is whether the "documents 'would have been created in essentially similar form irrespective of the litigation.'"  Willingham v. Ashcroft, 228 F.R.D. 1, 4 (D.D.C. 2005) (citing United States v. Adlman, 134 F.3d 1194, 1202-03 (2d Cir. 1998)).

### 2. *Certain Categories of Documents Were Found to Be Work Product*

With the exception of the exit interviews and the two internal audits, I sustained M&T's claim of work product protection for the documents submitted for in camera review.  Fago, 238 F.R.D. at 7-8.  Therefore, I found work product protection applied to the attorney interview notes with M&T employees, correspondence from counsel, and compilations of information.  Id.

As explained in my previous Order, the attorney interview notes are classic opinion work product.  Id. at 7.  Specifically, those notes reveal counsel's mental impressions and litigation strategy because they reveal who counsel thought important to interview, what questions counsel thought important to ask, and what information counsel thought important to memorialize.  Id.; see also Hickman, 329 U.S. at 512-13.  The interview notes would not have been created and the interviews would not have taken place had it not been for the present litigation.  Fago, 238 F.R.D. at 7.  The single memorandum from M&T's Associate General Counsel to M&T officials

5

regarding this litigation is also unquestionably attorney work product. Id. at 8.  Finally, the two charts reflecting compilations of information appear to have been created in the course of the preparation of M&T's defense of the lawsuit and are classic work product. Id.

### 3.  *Subject Matter Waiver Did Not Apply*

Having found that some of the documents were indeed work product, I then determined that M&T did not waive work product protection for those documents and for deposition testimony regarding its investigation by electing to share certain information with HUD in its June 10, 2004 presentation. Id. at 10.

As I previously explained, disclosure of a document protected by the work product doctrine typically waives work product protection for that document. Id. at 8; see also In re United Mine Workers of Am. Employee Benefit Plans Litig., 159 F.R.D. 307, 310 (D.D.C. 1994).  In certain circumstances, the disclosure of one document waives protection not only for that actual document, but also for documents relating to the same subject matter, which were not disclosed.  See Bowles v. Nat'l Ass'n of Home Builders, 224 F.R.D. 246, 259 (D.D.C. 2004). This principle is commonly referred to as subject matter waiver. Fago, 238 F.R.D. at 8.  In the context of attorney work product, courts only find subject matter waiver when an order for the disclosure of the additional documents would not defeat the purpose of the work product doctrine, which is the promotion of the adversary system by safeguarding the fruits of an attorney's trial preparations from the opponent. Id.; United Mine Workers, 159 F.R.D. at 312.  In situations where the court finds that subject matter waiver is necessary to promote the adversary system, it is within the court's "discretion to define the subject matter of the disclosed documents narrowly to prevent the scope of the subject matter waiver from being unduly broad." United Mine

Workers, 159 F.R.D. at 309.

In moving to compel, Plaintiff argued that M&T waived work product protection as to all documents relating to its investigation by disclosing its findings and conclusions to HUD. Fago, 238 F.R.D. at 8-9.  M&T argued that such broad subject matter waiver would be inappropriate because its disclosure to HUD was limited, M&T merely represented to HUD that it was providing the findings of an ongoing investigation, HUD was not M&T's adversary, and the disclosure was made pursuant to a Federal Housing Administration regulation. Id. at 9. Moreover, M&T asserted that it does not, as Plaintiff contended, intend to use HUD's failure to take administrative action against it to support its defense of this lawsuit. Id.

I found that, under the circumstances of this case, subject matter waiver would be contrary to, rather than promote, the underlying purposes of the attorney work product doctrine. Id. at 9-10. I further found that Plaintiff is already on a level playing field as she was provided with a copy of M&T's PowerPoint presentation given to HUD. Id. at 10.  To provide Plaintiff with more would not then level the playing field, but would instead give Plaintiff an unjustified advantage. Id.  Such a windfall would be contrary to the protection of the adversary system. See id.; United Mine Workers, 159 F.R.D. at 312.  Moreover, during the discovery phase of this litigation, Plaintiff would have had access to the knowledge held by the M&T employees who were interviewed as part of the investigation through the appropriate discovery methods; requiring the disclosure of counsel's interview notes was completely unwarranted. Fago, 238 F.R.D. at 10; see also Hickman, 329 U.S. at 510-11.

Especially relevant to the instant motion, I also held that Plaintiff would not be prejudiced by not receiving the additional information she now seeks because M&T asserted it is not

planning to use HUD's decision not to take administrative action to its advantage in this litigation. Fago, 238 F.R.D. at 10.  Accordingly, Plaintiff would not be unfairly prejudiced by any lack of information with which to attack HUD′s conclusion. Id.

I further concluded the documents and testimony that plaintiff seeks are the most protected of all attorney work product—documents that contain, and testimony that reveals, attorney mental impressions. Id.  As I explained, although it would be extreme to say that subject matter waiver could never apply to opinion work product, it would logically require a stronger showing to demonstrate that its disclosure would be necessary to protect the adversary system. Id.

### B. Relator's Motion for Reconsideration of the Court's Order

#### 1. Use in Defense

In moving for reconsideration, Plaintiff focuses on that part of my Order that found no prejudice to Plaintiff because the Defendant did not intend to use the documents at issue in its defense. Memorandum in Support of Relator's Motion for Reconsideration ("Rel. Mem.") at 1. According to Plaintiff, since the Motion to Compel was fully briefed in September 2005, where M&T represented its intention not to use the documents at issue in its defense, M&T has indicated the contrary, namely in its Motion for Summary Judgment and Reply, that had HUD felt victimized by M&T, it would have in fact sanctioned M&T in some way. Id. at 2.  Of even greater concern to Plaintiff is M&T's Reply brief, in which the Defendant, in a section entitled "HUD Has Been Informed Of All Material Case Developments And Has Nevertheless Elected To Take No Action Against MTMC Or To Seek Damages," states:

> As much as Relator's counsel may not want to admit it, HUD has been fully
> informed and has indeed investigated the allegations of this case and found them

8

>wanting.  There is no clearer statement of HUD's view that the alleged forgeries
>were immaterial and not the direct cause of an undue loss suffered by HUD than
>its letter from Program Compliance to MTMC dated April 5, 2005, indicating
>that no enforcement actions were open or ongoing together with HUD's
>statement that it did not intend to seek in any share of Relator's potential
>recovery.

Id. at 2 (quoting Reply Memorandum in Support of M&T Mortgage Corporation's Motion for Summary Judgment ("Reply") at 23).  Plaintiff argues that her inability to view the documents on which M&T based its pitch to HUD that resulted in HUD's decision not to investigate further will prevent Plaintiff from adequately attacking M&T's claim that HUD found no fault in the Defendant's actions. Id. at 3.  As a result, she argues that prejudice to her as a result of being denied access to those documents is inevitable. Id.

In opposition, M&T argues it "has not misrepresented its intentions with respect to HUD's inaction and because, in any case, Relator cannot make the 'stronger showing' of 'substantial need' required to support subject matter waiver of attorney opinion work-product." M&T Mortgage Corporation's Memorandum in Opposition to Relator's Motion for Reconsideration ("Defs. Opp.") at 2.  Defendant claims it is "simply not 'argument' of any kind" to include in the conclusion to its Motion for Summary Judgment the assertion that, had HUD felt it had been victimized by M&T, surely HUD would have imposed sanctions, indemnified the remaining loans, intervened in the case or attempted to share in any of Relator's recovery. Id.

While the conclusive statements of M&T in its Motion for Summary Judgment certainly could be characterized as argumentative, a review of the Motion shows that the Defendant's main bases for refuting Fago's claims, such as causation and materiality, are not related to HUD's inaction.  The argumentative statements appearing in the conclusion are the first statements (other than declarations of fact known on the record) in the motion to suggest HUD's

inaction as a basis for inferring that HUD had not been defrauded.

The Reply brief, however, is cause for greater concern. At the outset, Defendant states that Fago failed to contest the fact that "HUD has been fully apprised of all material case developments and has nevertheless elected not to take any enforcement action against [Defendant] and does not seek damages." Reply at 2. In a section of the Argument[2] dedicated to that point, M&T goes on to assert the "significance of this fact" in highlighting Relator's absent attempt to vitiate it. Id. at 23. M&T cannot have it both ways, promoting the significance of HUD's inaction to its argument in the Reply brief and claiming the statements are a mere "reference" to HUD's inaction in its Opposition to Relator's present motion.

M&T claims the "reference to HUD's election to take no action" is necessary to counter Fago's accusation that M&T had concealed facts from HUD, but M&T does not simply state that "HUD has been kept abreast of all material case developments." See Opp. at 6. Otherwise, the Reply brief would have ended with "HUD has been fully informed and has indeed investigated the allegations of this case." See Reply at 25. Instead, M&T goes on to argue that HUD's failure to seek any share of Relator's potential recovery provides "no clearer statement of HUD's view that the alleged forgeries were immaterial and not the direct cause of an undue loss." See id. Even if not offered as dispositive of Relator's claim, these statements can only be characterized as argument that HUD's inaction bolsters M&T's defense.

### 2. *Impact on Relator*

As a result of M&T's argument that HUD certainly would have pursued a different course of action had it felt victimized by M&T, Relator claims that she is prejudiced by her

---

[2] It is noteworthy that Defendant claims these statements are not "argument," but they are included in the Argument

inability to access the "materials disclosed in M&T Mortgage Corporation's presentation to HUD on June 10, 2004." Rel. Mem. at 1.  As she later explains, however, Relator seeks much more than the "disclosed" documents, as she already has a copy of the very PowerPoint presentation that M&T presented to HUD.  Rather, she seeks all of "the materials which are quoted in, and underlie, [M&T's] presentation to HUD on June 10, 2004." Id. at 3.  Fago claims that without viewing the materials at issue, she cannot attack M&T's claim that HUD "somehow approved of defendant's actions." Id.  However, she has presented no evidence that HUD has had any access to any of the "underlying" documents she now seeks.  In fact, Fago already has in her possession the same presentation on which HUD based its conclusion, which should afford her the same review conducted by HUD to reach its decision to abstain from further proceedings.  Therefore, she is not seeking a new finding of waiver as to documents disclosed to HUD; she again seeks subject matter waiver for all of the materials I have found to be protected work product.

  The premise of Relator's argument for reconsideration is my finding that Relator could not be prejudiced by lack of access to the documents used to create M&T's presentation to HUD. Id.  While prejudice was a factor in my previous opinion, it was not the sole basis for the Court's refusal to waive subject matter privilege for the documents that are unquestionably work product. As I stated previously, under the circumstances of this case, subject matter waiver would be contrary to, rather than promote, the underlying purposes of the attorney work product doctrine. Fago, 238 F.R.D. at 9-10.  Even considering Defendant's summary judgment arguments, Plaintiff has not shown that disclosure of M&T's opinion work product would

---

section of the brief.

promote the adversary system. Nothing in Plaintiff's current motion contradicts my finding that she is on a level playing field, where providing her with more will give her an unjustified advantage. See id. at 10.

Finally, Relator does not and cannot contradict my finding that the documents and testimony she seeks are the most protected of all attorney work product—documents that contain, and testimony that reveals, attorney mental impressions. See id. She has not made any showing, let alone the necessary stronger showing, to demonstrate that the protection of the adversary system requires disclosure of the documents at issue. Therefore, Relator's Motion for Reconsideration is denied.

### III.   IN CAMERA REVIEW OF PALMER DOCUMENTS

My prior opinion also addressed Plaintiff's Motion (#2) to Compel Production of Testimony and Documents Concerning M&T's Personnel Actions ("Pls. (#2) Mot."). In that motion, Plaintiff sought (1) corporate testimony on M&T's personnel actions regarding employees who were implicated in the alleged fraud scheme and (2) documents generated in connection with the termination of Suzanne Palmer, an M&T employee who admitted to forging documents submitted to HUD. Pls. (#2) Mot. at 1. M&T asserted attorney-client privilege relating to the corporate testimony and refused to produce the documents that Relator requested. Plaintiff's Memorandum in Support of Her Motion (#2) to Compel Production of Testimony and Documents Concerning M&T Personnel Actions ("Pls. (#2) Mem.") at 1. I resolved the deposition testimony issue by conducting the deposition before me in September 2006. Fago, 238 F.R.D. at 12. Therefore, the only remaining issue is production of documents relating to Palmer's termination.

As stated in my prior opinion, very little information was presented to the Court about these documents, and the parties' arguments for and against their production were not apparent. Id. I therefore ordered Plaintiff to provide the requests for production to which she claims the documents are responsive, and I further ordered a review of the documents in camera. Id. According to M&T, only one document is at issue, which is deemed "confidential" and is included on Defendant's Privilege Log. Defendant's Memorandum in Opposition to Relator's Second Motion to Compel ("Defs. (#2) Mem.") at 7, n.1. The single document claimed to be responsive to Plaintiff's request for personnel files maintained by M&T for Palmer is identified in Defendant's privilege log as "Separation Agreement between Suzanne Palmer and M&T Bank" (the "Separation Agreement"). Relator is certainly aware that Palmer was terminated due to her forgeries of certain documents while employed at M&T, but Relator does not appear to be aware of the exact terms of the agreement.

In the briefs submitted by the parties relating to Plaintiff's motion to compel testimony and documents relating to personnel decisions, both Plaintiff and Defendant focus on the attorney-client privilege invoked regarding deposition testimony by corporate representatives of M&T. However, the privilege log—submitted to the Court with the *in camera* review—seeks protection of the Separation Agreement as work product. In the interest of completeness I will address both claims of privilege as they relate to the Separation Agreement.

As I previously stated, in order to be protected by the attorney-client privilege, the document must disclose a confidential communication from that client to an attorney for the purpose of securing legal advice. Fago, 238 F.R.D. at 10-11. On the face of the Separation Agreement, it is impossible to derive any such communication since it speaks to the terms and

conditions of Palmer's discharge. I suppose one could say that by seeing what those terms are, one could derive the client's concerns that led the attorney to draft the agreement. But that sweeps too broadly, especially as no evidence has been presented to the Court as to what precise role the attorney played in drafting or revising the document in response to the client's expressed concerns. The most we may infer is that some of the terms may have been suggested by the client, while others may have been incorporated by the lawyer to protect his client. Furthermore, protections for M&T incorporated into the document most likely came from the attorney, who would have inserted those terms on the basis of experience and knowledge of the law. To hold that the entire Separation Agreement is nevertheless privileged because of the theoretical possibility that some of its terms might have come from the client, whereby disclosure would thus allow one to identify what the client told the attorney in preparing the document, stretches the attorney-client privilege beyond its mandate to be narrowly construed.[3] See Evans v. Atwood, 177 F.R.D. 1, 3 (D.D.C.1997).

      Viewing the Settlement Agreement as work product is also problematic. As I have explained, defining a document as work product requires a showing that it was prepared or obtained in anticipation of litigation, which in turn requires consideration of temporal and motivational elements. See Jinks-Umstead, 231 F.R.D. at 15. In other words, at the time the Separation Agreement was created, there must have been a reasonable belief that litigation was a possibility, and the agreement must have been created because of the prospect of litigation. Though the litigation was already a reality at the time the document was created, it simply

---

[3] Moreover, had there been a privilege between Palmer and M&T's lawyers while she was employed by M&T, the Separation Agreement terminated that privilege the moment she signed it.

cannot be said that the Separation Agreement would not have come into existence *but for* this case. While Palmer's forgeries were first disclosed at some point after this case was filed, the trial was certainly not the motivation for the Settlement Agreement. The agreement came into existence when M&T decided it could not continue her employment in light of her forgeries, regardless of the existence of this lawsuit. Additionally, it cannot be said that the disclosure of the Settlement Agreement in any way threatens the disclosure of counsel's mental impression, opinions, or legal theories as to how to defend M&T in this case.

I do not find that the attorney-client privilege or work product protection apply to the Separation Agreement, and therefore Defendant's assertion of privilege is overruled. Defendant must submit the document to Plaintiff within ten days of the date of this Memorandum Opinion.

## IV.   CONCLUSION

For the forgoing reasons, <u>Relator's Motion for Reconsideration</u> will be denied, and Defendant's assertion of work product protection for the *in camera* documents will be overruled. An Order accompanies this Memorandum Opinion.

_____/s/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: April 11, 2007